**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAMEKA M. FLAMMING,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | ) | CASE NO. 5:26-CV-00054-JDA<br><br>MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Tameka M. Flamming ("Ms. Flamming") seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 8). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## II. PROCEDURAL HISTORY

On February 23, 2023, Ms. Flamming filed her application for SSI. (Tr. 230). Ms. Flamming's application related to her low vision, depression, anxiety, and asthma. (Tr. 257).

The Social Security Administration ("SSA") denied Ms. Flamming's application initially and upon reconsideration. (Tr. 79, 86). Ms. Flamming requested a hearing before an administrative law judge ("ALJ"). (Tr. 110). The ALJ held a hearing on March 6, 2025. (Tr. 34). Ms. Flamming testified, as did an independent vocational expert ("VE"). On March 26,

2025, the ALJ issued a written decision finding that Ms. Flamming is not disabled. (Tr. 14). The ALJ's decision became final on November 12, 2025, when the Appeals Council declined further review. (Tr. 1).

On January 8, 2026, Ms. Flamming filed her Complaint, challenging the Commissioner's final decision that she was not disabled. (ECF No. 1). Ms. Flamming asserts the following assignments of error:

(1) The administrative law judge ("ALJ") committed reversible error by rejecting the state agency psychological consultant's superficial contact limitation as vocationally undefined and substituting a materially different and less restrictive quantitative limitation in the RFC without consulting the vocational expert in violation of Social Security Regulation 24-3p and 20 C.F.R. § 416.920c.

(2) The residual function capacity ("RFC") is not supported by substantial evidence where the ALJ found a moderate limitation in adapting and managing oneself but failed to include any explicit restriction regarding workplace changes in the RFC, leaving the core functional manifestation of that limitation unaddressed.

(3) The RFC is not supported by substantial evidence where the ALJ failed to evaluate the functional impact of the plaintiff's diagnosed headache condition, specifically the off-task and attendance implications of headaches occurring several times per week, and instead substituted an RFC restriction addressing an unrelated domain.

(ECF No. 11, PageID # 1872).

## III. BACKGROUND

### A. <u>Personal, Educational, and Vocational Experience</u>

Ms. Flamming was born in 1988 and was 34 years old on the date of her application. (Tr. 230). She attended community college. (Tr. 258). Ms. Flamming is married and has three children, though her children live with her brother. (Tr. 52, 231). She does not have any prior relevant work experience. (Tr. 26).

### B. <u>Relevant Hearing Testimony</u>

#### *1. Ms. Flamming's Testimony*

Ms. Flamming testified that she has dealt with mental health issues previously but that those issues have worsened recently. (Tr. 48). She also testified that she does not like being around people and that she stays home as a result. (Tr. 49). Ms. Flamming further testified that she struggles with focus or concentration and that she will forget what she was doing a few times per week. (Tr. 50). She also testified that she gets headaches a few times per week but that she is not sure why. *Id*.

Ms. Flamming testified that she is not able to perform housework and that her husband assists her. (Tr. 45). Her husband also does the grocery shopping, but she will accompany him approximately once per month. (Tr. 52-53). She also testified that she spends her average day coloring or playing games on her phone. (Tr. 45).

#### *2. Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Flamming's age, education, and prior work experience who could perform a full range of light work but could only occasionally climb stairs, crouch, crawl, kneel, stoop, bend, or balance; could not work around hazards; could not climb ladders, ropes, or scaffolds or work at unprotected heights or around dangerous machinery; must avoid exposure to irritants or excessive temperatures; could handle occasional interactions with supervisors, coworkers, and the general public; could not perform work at a production rate pace or work requiring hourly quotas; and was limited to understanding, remembering, and carrying out simple instructions. (Tr. 59-60). The VE testified that the hypothetical individual could perform jobs existing in significant numbers in the national economy, including work as a router, collator operator, or

inspector and hand packager. (Tr. 60).

The ALJ next asked the VE if the hypothetical individual could perform work if the individual were limited to work at the sedentary exertional level. (Tr. 61). The VE testified that the hypothetical individual could perform work as a printed circuit board assembly inspector or a document preparer. *Id*. The VE further testified that the number of jobs available would be reduced if the individual could not interact with the public and could not perform team or tandem duties with coworkers. (Tr. 62). The VE also testified that it would be work preclusive if the individual could not interact with coworkers or others. (Tr. 63-64). Finally, the VE testified that it would be work preclusive if the individual were absent from work twice per month. (Tr. 65).

In response to a question from Ms. Flamming's counsel, the VE testified that it would be work preclusive if the hypothetical individual were off-task more than 15 percent of the time or would require two additional 15-minute breaks per day. (Tr. 70-72).

### C. Relevant Opinion Evidence[1]

#### *1. State Agency Psychologists*

On September 28, 2023, Amy S. Johnson, Psy.D., a state agency psychologist, opined that there was insufficient evidence to evaluate Ms. Flamming's mental functioning. (Tr. 83). On April 13, 2024, Deryck Richardson, PhD, opined on reconsideration that Ms. Flamming suffered from medically determinable mental health impairments. (Tr. 94). Dr. Richardson also opined that Ms. Flamming was moderately limited in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and

[1] Neither party has included a detailed summary of the relevant medical evidence in their briefs, and Ms. Flamming's arguments are largely legal in nature. As a result, the Court has not included a separate summary of the medical evidence of record. The Court will discuss relevant evidence as necessary in connection with the parties' arguments.

concentration for extended periods; work in coordination with or in close proximity to others; complete a normal day and workweek and perform and a consistent pace; interact appropriately with the general public; and respond appropriately to changes in the work setting. (Tr. 93-94). In written comments, Dr. Richardson further opined that Ms. Flamming could understand and complete one- or two-step tasks; complete simple work tasks that were not fast paced and did not involve high production quotas; interact on an "infrequent and superficial" basis with the general public and on a superficial level with coworkers; and adapt to a setting that is routine and predictable. *Id*.

The ALJ found that Dr. Richardson's opinion was persuasive to the extent he opined that Ms. Flamming had no more than a moderate limitation in any functional category. (Tr. 26). However, the ALJ also found that Dr. Richardson's opinion was unpersuasive to the extent he opined that Ms. Flamming was capable of only infrequent and superficial interaction with the public and others because those terms are vocationally undefined. *Id*. The ALJ instead limited Ms. Flamming to occasional interactions with coworkers and others. *Id*.

*2.* ***State Agency Medical Consultants***

On September 9, 2023, Leslie Green, M.D., a state agency medical consultant, opined that there was insufficient evidence to assess Ms. Flamming's physical capacity. (Tr. 82). On January 18, 2024, Laura Rosch, D.O., opined on reconsideration that Ms. Flamming had no postural, manipulative, visual, or communicative limitations, but that she should avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, and poor ventilation in light of her moderate persistent asthma. (Tr. 92). The ALJ found that Dr. Rosch's opinion was persuasive. (Tr. 25).

*3.* ***Joshua Magleby, M.D.***

On March 27, 2024, Ms. Flamming underwent a consultative examination with Dr. Magleby, a clinical neuropsychologist. (Tr. 925). Dr. Magleby opined that Ms. Flamming's intelligence appeared to be borderline and that her memory appeared to be consistent with her intelligence. (Tr. 929). Dr. Magleby also opined that Ms. Flamming's adaptive ability appeared to be more than adequate overall, but that she had some trouble coping and relating socially. (Tr. 929-30). Ms. Flamming displayed signs of anxiety along with a disheveled appearance, which Dr. Magelby said was unsurprising given her claimed homelessness. (Tr. 930).

With respect to the various functional categories, Dr. Magleby opined that Ms. Flamming's ability to understand, remember, and carry out simple instructions was similar to other adults her age and that her comprehension and memory appeared average. *Id*. However, her ability to follow complex instructions appeared to be only adequate for her age. *Id*. Dr. Magleby also opined that Ms. Flamming's ability to maintain attention, concentration, persistence, and pace was only fairly adequate for her age. (Tr. 931). Ms. Flamming's ability to perform simple repetitive tasks was more than adequate, but her ability to perform multi-step tasks was at least somewhat impaired. *Id*. With respect to Ms. Flamming's ability to relate to others, Dr. Magleby opined that Ms. Flamming was at least somewhat impaired as a result of trauma-related anxiety, maladaptive personality traits, and the effects of homelessness. *Id*. Finally, Dr. Magleby opined that Ms. Flamming's ability to withstand the mental stress and pressures of daily work was at least somewhat impaired. *Id*.

## IV. THE ALJ'S DECISION

The ALJ first determined that Ms. Flamming had not engaged in substantial gainful activity since December 1, 2022, the date of her application. (Tr. 19). The ALJ next determined that Ms. Flamming had the following severe impairments: asthma and mental/emotional health conditions variously diagnosed as adjustment disorder with depressed mood, anxiety disorder, persistent depressive disorder, unspecified anxiety disorder, unspecified trauma and stressor related disorder, major depressive disorder, borderline intellectual functioning, and cannabis use disorder. *Id*. The ALJ also determined, however, that none of Ms. Flamming's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ further determined that Ms. Flamming had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b), except occasional climbing of stairs; no climbing of ladders, ropes, or scaffolds; occasional crouching, crawling, kneeling, stooping/bending and occasional balancing as defined in the SCO; avoid workplace hazards such as dangerous, moving machinery, and unprotected heights; avoid continuous exposure to pulmonary irritants and avoid temperature extremes; not able to perform work requiring a specific production-rate, such as assembly line pace work or work that requires hourly quotas; occasional interactions with supervisors, coworkers, and the general public; and the claimant can understand, remember, and carry out simple instructions.

(Tr. 22).

The ALJ next determined that Ms. Flamming had no past relevant work. (Tr. 26). However, the ALJ determined that, considering Ms. Flamming's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that Ms. Flamming could perform, including work as a router, collator operator, and inspector/hand packager. (Tr. 26-28). Accordingly, the ALJ determined that Ms. Flamming was not disabled. (Tr. 28).

## V. LAW & ANALYSIS

### A. Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id.* While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the

regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

**B. Standard for Disability**

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 416.920. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. § 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 416.920(g); *Abbott*, 905 F.2d at 923.

**C. Analysis**

***1. "Occasional" Versus "Superficial" Interaction Limitation***

In her first assignment of error, Ms. Flamming argues that the ALJ failed to properly incorporate the opinion of Dr. Richardson into the RFC, even though the ALJ found that opinion persuasive. In particular, Ms. Flamming argues that the ALJ erred by converting Dr. Richardson's opinion that Ms. Flamming could handle only infrequent and superficial interactions with others into a restriction that Ms. Flamming could only have occasional interaction with others.

"A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which [the ALJ] is relying, and [the ALJ] may not ignore

evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17 (quotations omitted).

Here, the ALJ found Dr. Richardson's opinion persuasive to the extent Dr. Richardson found that Ms. Flamming had no more than a moderate limitation in any functional category. (Tr. 26). However, the ALJ also found that Dr. Richardson's opinion was not persuasive to the extent he opined that Ms. Flamming was limited to infrequent and superficial interactions with the public and others because "infrequent" and "superficial" are vocationally undefined terms. *Id*. To account for Ms. Flamming's impairments, the ALJ instead limited her to "occasional" interaction with the public and others. *Id*. Ms. Flamming argues that the ALJ erred because "superficial" and "occasional" have different meanings in the Social Security context.

An ALJ is not required to adopt the verbatim wording of an opined limitation in the RFC finding. *See Poe v. Comm'r of Soc. Sec*., 342 F. App'x 149, 157 (6th Cir. 2009); *Reeves v. Comm'r of Soc. Sec*., 618 F. App'x 267, 275 (6th Cir. 2015). But Social Security Ruling ("SSR") 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). The question, then, is whether the ALJ's limitation to "occasional" interactions conflicts with the state agency psychologists' limitation to "superficial" interactions and, if so, whether the ALJ adequately explained her decision to adopt an occasional interaction limitation rather than a superficial interaction limitation.

As the ALJ noted, the term "superficial interaction" is not defined in the governing regulations. *See Lopez v. Comm'r of Soc. Sec*., No. 1:22-CV-01801, 2024 WL 1580101, at

*19 (N.D. Ohio Apr. 11, 2024) (collecting cases). This Court has previously stated that there is general—although not universal—agreement that the two terms are not identical. *See Jones v. Comm'r of Soc. Sec.*, No. 1:25-CV-2648, 2026 WL 3059174, at *10 (N.D. Ohio Oct. 13, 2026) (report and recommendation) (citing *Haahr v. Comm'r of Soc. Sec.*, No. 3:23 CV 2159, 2024 WL 5242214, at *3 (N.D. Ohio Dec. 30, 2024)). "Indeed, as other courts have explained, 'superficial and occasional are of course two different words, and they have at least somewhat different meanings.'" *Culbertson v. Comm'r of Soc. Sec.*, No. 1:24-cv-01847, 2026 WL 696554, at *3 (N.D. Ohio Mar. 12, 2026) (quoting *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 737 (S.D. Ohio 2024)) (cleaned up).

Courts are divided, however, on whether the linguistic differences between the two terms mean that an ALJ commits reversible error by substituting an "occasional" interaction limitation for a "superficial" interaction limitation. *See Roberts v. Comm'r of Soc. Sec.*, No. 4:25CV00764, 2026 WL 1551700, at *13 (N.D. Ohio June 2, 2026) (noting disagreement on the issue). "[S]ome district courts within the Sixth Circuit have determined that 'occasional interaction' differs from 'superficial interaction,'' because the former refers to the quantity of interactions while the latter refers to the quality of those interactions. *Eberhart v. Comm'r of Soc. Sec.*, No. 3:25-CV-02190-JRK, 2026 WL 2715938, at *7 (N.D. Ohio Sept. 15, 2026) (report and recommendation) (citing cases). Those courts also "reason that because the terms are defined differently, an ALJ must sufficiently explain why she translated an opined 'superficial interaction' limitation into 'occasional interaction' in the RFC." *Eberhart*, 2026 WL 2715938, at *6.

Many of the decisions adopting this approach, including the cases on which Ms. Flamming relies, come from the Southern District of Ohio. *See Hutton v. Comm'r of Soc.*

*Sec.*, No. 2:20-cv-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020), *report and recommendation adopted sub nom.*, 2020 WL 4334920 (S.D. Ohio July 28, 2020); *Garvin v. Comm'r of Soc. Sec.*, No. 2:20-cv-2566, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021), *report and recommendation adopted*, 2021 WL 2533191 (S.D. Ohio June 21, 2021); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019). However, several decisions in this district also support Ms. Flamming's argument. *See Renfrow v. Comm'r of Soc. Sec. Admin.*, No. 3:24-CV-00946-JJH, 2024 WL 5158962, at *9 (N.D. Ohio Dec. 18, 2024), *report and recommendation adopted*, 2025 WL 959528 (N.D. Ohio Mar. 31, 2025) ("disagree[ing] that occasional interaction (a quantitative limitation) accounts for a limitation to superficial interaction (a qualitative limitation)"); *White v. Comm'r of Soc. Sec.*, No. 5:25-CV-02554-PAB, 2026 WL 2333279, at *5 (N.D. Ohio Aug. 12, 2026), *report and recommendation adopted*, 2026 WL 2431915 (N.D. Ohio Aug. 19, 2026) ("courts within the Sixth Circuit routinely find that an ALJ may not replace a limitation regarding 'superficial interaction' with one regarding 'occasional interaction' absent explanation") (quotations omitted).

On the other hand, a number of courts in this district have "conclude[d] that occasionally does not create a sufficient conflict with superficially when applied to 'interactions' that the ALJ would be required to' explain adopting a limitation to occasional interaction while omitting a limitation to superficial interaction." *Culbertson*, 2026 WL 696554, at *4 (quoting *Stephen D.*, 734 F. Supp. 3d at 738); *see also Eberhart*, 2026 WL 2715938, at *8; *Burley v. Comm'r of Soc. Sec.*, No. 4:23-cv-00218, 2024 WL 1297554, at *6 (N.D. Ohio Mar. 27, 2024) ("The Court declines to adopt our sister District's approach

distinguishing superficial and occasional interaction.")

Courts rejecting Ms. Flamming's argument have reasoned that "[t]ime-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions.'" *Culbertson*, 2026 WL 696554, at *4 (quoting *Stephen D.*, 734 F. Supp. 3d at 738). Courts have also relied on the Sixth Circuit's decision in *Reeves*, which held that the ALJ did not err in adopting an "occasional" interaction limitation rather than the "superficial" limitation contained in the state agency psychologists' opinions because an ALJ is not "required to adopt the state agency psychologist's limitations wholesale." 618 F. App'x at 275; *see Culbertson*, 2026 WL 696554, at *4 (relying on *Reeves*); *Wianecki v. Comm'r of Soc. Sec.*, No. 3:26-cv-369, 2026 WL 2436351, at *7 (N.D. Ohio Aug. 20, 2026), *report and recommendation adopted*, 2026 WL 2627850 (N.D. Ohio Sept. 4, 2026) (citing *Reeves* for the proposition that "the Sixth Circuit has found meritless the argument that an occasional-interaction limitation was inconsistent with a superficial-interaction limitation"); *Scott v. Comm'r of Soc. Sec.*, No. 3:25-CV-00439, 2025 WL 2753602, at *9 (N.D. Ohio Sept. 29, 2025) (report and recommendation) ("Rather than follow the Southern District of Ohio's approach that distinguishes between superficial and occasional interaction, this Court aligns with those from this District that have remained true to the precedent established by *Reeves*.").

After careful consideration, the Court concludes that the latter set of decisions is more persuasive and that an ALJ does not commit reversible error by adopting an occasional interaction limitation rather than a superficial interaction limitation. The Court agrees that, while "superficial" and "occasional" are different words with different meanings, a limit to "occasional" interactions is also reasonably understood to limit the claimant to surface-level interactions. Moreover, while the Sixth Circuit did not discuss the issue "in detail" in *Reeves*,

the case "at least suggests that 'superficial' and 'occasional' are consistent descriptions of a [plaintiff]'s abilities for purposes of determining a disability RFC." *Stephen D.*, 734 F. Supp. 3d at 738. Accordingly, like a number of other recent decisions in this district, the Court rejects Ms. Flamming's argument that an ALJ errs by translating a superficial interaction limitation into a more vocationally-relevant limitation to occasional interactions.

But even assuming a "superficial interaction" limitation is meaningfully different from an "occasional interaction" limitation, the ALJ explained that she adopted an occasional interaction limitation because the term "superficial" is not vocationally defined. As other courts in this district have held, the ALJ's reasoning is sufficient to explain any discrepancy between the state agency psychologists' opinions and the RFC. *See Eberhart*, 2026 WL 2715938, at *8 (holding that ALJ adequately explained failure to adopt superficial interaction limitation where ALJ stated that "superficial" was not a vocationally defined term); *Parsons v. Comm'r of Soc. Sec.*, No. 3:25-CV-02631-JRK, 2026 WL 3257093, at *7 (N.D. Ohio Oct. 29, 2026) (report and recommendation) (same).

Ms. Flamming also argues that the ALJ violated SSR 24-3p, which she claims requires an ALJ to develop the vocational record where an opined limitation does not correspond to DOT terminology. Ms. Flamming's argument is misplaced. As the Commissioner notes, SSR 24-3p provides that, if a VE uses a data source that defines exertion, education, or skill levels differently from SSA regulations, the VE should explain the difference. SSR 24-3p, 2024 WL 5256890, at *4 (Dec. 6, 2024). SSR 24-3p further provides that, if the VE fails to provide the requisite explanation, the ALJ "will usually need to develop the record with sufficient evidence to make a supported finding at step four or step five of the sequential evaluation process." *Id.* at *6. SSR 24-3p says nothing about an ALJ's supposed obligation to develop

the record where a state agency psychologist or other medical source opines on limitations using terminology that is not defined in the DOT.

In addition, SSR 24-3p provides that, where a claimant is represented by counsel at an administrative hearing, the SSA "expect[s] the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." *Id*. at *4. Ms. Flamming was represented by counsel at the hearing, but her counsel did not ask the VE any questions about a superficial interaction limitation. SSR 24-3p does not provide a basis for remand, and Ms. Flamming's first assignment of error is without merit.

*2.* **<u>The ALJ's Failure to Include Limitations on Changes in the Workplace</u>**

In her second assignment of error, Ms. Flamming argues that substantial evidence does not support the ALJ's RFC because the ALJ found at Step Three that Ms. Flamming had a moderate limitation in adapting and managing herself but did not include any restrictions in the RFC regarding permissible changes in the workplace.

In response, the Commissioner argues that the ALJ is not required to translate every Step Three finding into a corresponding RFC restriction. The Commissioner is correct. SSR 96-8p provides that "the limitations identified in the paragraph B and paragraph C criteria [at Step Three] are not an RFC assessment . . . ." 1996 WL 374184, at *4. "Accordingly, paragraph B findings need not correspond with RFC findings." *Duck v. Comm'r of Soc. Sec. Admin*., No. 3:26-cv-0747, 2026 WL 3391834, at *15 (N.D. Ohio Nov. 9, 2026); *see also Hayman v. Berryhill*, No. 3:16-cv-01998, 2017 WL 9476860, at *9 (N.D. Ohio Oct. 30, 2017), *report and recommendation adopted sub nom.*, 2018 WL 618049 (N.D. Ohio Jan. 30, 2018) ("Plaintiff's argument—that an ALJ's findings at Step Three, which address whether a

claimant meets the requirements of a given Listing, must be incorporated into the RFC—is unsupported by case law."); *Lower v. Comm'r of Soc. Sec.*, No. 1:21-CV-1528, 2022 WL 1459550, at *11 (N.D. Ohio May 9, 2022) (holding that ALJ did not err in failing to include paragraph B findings in RFC assessment).

Ms. Flamming concedes the general point. She argues, however, that the ALJ erred in this particular instance because "the ALJ found a moderate limitation in adapting and managing oneself, then two sentences later stated there was no indication the Plaintiff has a minimal capacity to adapt to changes outside her daily routine." (ECF No. 13, PageID # 1914). Ms. Flamming has not explained how those two statements are in conflict. One can be moderately limited in adapting and managing oneself under the Paragraph B criteria while still having a greater than minimal capacity to adapt to changes under the Paragraph C criteria. *See* Listing 12.00(F)(2) (providing that a "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively and on a sustained basis is fair"); Listing 12.00(G)(2)(c) ("The criterion in [Paragraph] C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. 'Marginal adjustment' means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.").

Ms. Flamming next argues that the limitations the ALJ adopted—which included restrictions on instruction complexity, interaction, and pace of work—do not account for her impairment in adapting and managing herself. However, Ms. Flamming does not cite any cases for that proposition, and at least one court in this circuit has held otherwise. *See Henry v. Bisignano*, No. 6:25-CV-109-HAI, 2026 WL 2280652, at *6 (E.D. Ky. Aug. 7, 2026)

(holding that limitations to simple instructions, simple tasks, and occasional interactions were crafted to address claimant's moderate limitations in all four domains and accounted for moderate limitation in claimant's ability to adapt or manage herself).

Finally, Ms. Flamming argues that remand is warranted because Dr. Magleby and Dr. Richardson specifically opined that Ms. Flamming was limited in her ability to respond appropriately to changes in the work setting. As noted above, an ALJ is not required to adopt all limitations from a medical source's opinion, even where the ALJ finds that opinion persuasive. *Reeves*, 618 F. App'x at 275 ("Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record."); *Kierczak v. Comm'r of Soc. Sec.*, No. 3:22 CV 320, 2023 WL 2548059, at *4 (N.D. Ohio Mar. 17, 2023) ("an ALJ is not required to adopt an entire opinion, even one he finds persuasive"). Reading the decision as a whole, the Court is satisfied that the ALJ considered the evidence of record and crafted an RFC designed to address Ms. Flamming's moderate limitations in all four functional categories. Ms. Flamming has not shown that the ALJ's manner of doing so warrants remand.

*3.* **<u>The ALJ's Treatment of Ms. Flamming's Headaches</u>**

Finally, Ms. Flamming argues that substantial evidence does not support the ALJ's RFC because the ALJ did not include off-task or attendance limitations based on Ms. Flamming's headache condition. Ms. Flamming's argument is without merit.

As an initial matter, while the Commissioner does not vigorously contest the point, it is not clear that the ALJ found that Ms. Flamming's headaches constituted a medically determinable impairment ("MDI"). The ALJ did not discuss Ms. Flamming's headaches at

Step Two, either as a severe or a non-severe impairment. Instead, the ALJ stated in a footnote while formulating Ms. Flamming's RFC that "there is no indication of a severe primary headache impairment on this record . . . ." (Tr. 23 n.1).

To the extent the ALJ found that Ms. Flamming did not have an MDI of a primary headache disorder, Ms. Flamming has not shown that the ALJ erred. At Step Two, the ALJ must determine whether the claimant has an MDI resulting from anatomical, physiological, or psychological abnormalities that can be shown by acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.921. The MDI "must be established by objective medical evidence from an acceptable medical source." *Id.*

The SSA has promulgated Social Security Ruling ("SSR") 19-4, 2019 WL 4169635 (Aug. 26, 2019), to explain how the agency will evaluate cases involving primary headache disorders. SSR 19-4p divides headaches into two groups: (1) primary headaches, which "occur independently and are not caused by another medical condition"; and (2) secondary headaches, which are a symptom of another medical condition. *Id.* at *3. Examples of primary headaches include migraines, tension-type headaches, and trigeminal autonomic cephalalgias. *Id.* Under SSR 19-4p, only primary headache disorders, not secondary headaches, can constitute an MDI. *Id.* at *5.

SSR 19-4 also issues guidance regarding how the agency will determine whether a claimant has an MDI of a primary headache disorder. SSR 19-4p states that "physicians diagnose a primary headache disorder only after excluding alternative medical and psychiatric causes of a person's symptoms." *Id.* at *4. It further states that physicians diagnose a primary headache disorder after reviewing a person's full medical and headache history and conducting a physical and neurological examination. *Id.* Headache journals, imaging, and

laboratory tests may also be of use in ruling out other medical conditions. *Id*.

Under SSR 19-4p, the SSA "will not establish the existence of an MDI based only on a diagnosis or a statement of symptoms . . . ." *Id*. at *6. Instead, SSR 19-4 lists four factors that the agency will consider in determining whether a claimant has an MDI of a primary headache disorder: (1) a primary headache disorder diagnosis from an acceptable medical source who reviewed the claimant's medical history, conducted a physical examination, and "made the diagnosis of primary headache disorder only after excluding alternative medical and psychiatric causes"; (2) an observation and detailed description of a typical headache event, including associated phenomena; (3) remarkable or unremarkable findings on laboratory tests; and (4) response to treatment. *Id*.

Ms. Flamming notes that her medical records reflect a diagnosis of a headache disorder in several places and that she was prescribed a migraine rescue medication. (Tr. 751, 758, 939, 943, 962). However, she has not identified any records where a medical source diagnosed a primary headache disorder after excluding alternative causes; observed or described in detail a typical headache; or discussed findings on laboratory tests. This Court has previously rejected arguments that an ALJ erred in finding that headaches did not constitute an MDI where an acceptable medical source failed to do so. *See Dellarco v. Comm'r of Soc. Sec. Admin.*, No. 4:22-CV-00962-PAB, 2023 WL 3324833, at *10 (N.D. Ohio Apr. 20, 2023), *report and recommendation adopted*, 2023 WL 3320142 (N.D. Ohio May 9, 2023). To the extent the ALJ found that Ms. Flamming did not have an MDI of a primary headache disorder, substantial evidence supports the ALJ's conclusion.

Even assuming the ALJ did find that Ms. Flamming's headaches constituted a non-severe impairment, substantial evidence supports the ALJ's RFC determination. As the

Commissioner correctly argues, "the mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam); *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) ("The mere existence of [an] impairment[], however, does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time."). Instead, Ms. Flamming had the burden of establishing that her headaches imposed limitations that the ALJ should have included in the RFC.

Ms. Flamming points to her testimony that she experienced headaches several days per week. (Tr. 50). However, the ALJ found that Ms. Flamming's statements about her symptoms were not consistent with the medical evidence. (Tr. 25). Moreover, the ALJ incorporated limitations based on Ms. Flamming's headaches, limiting her to work involving simple instructions in an environment without a production rate pace. (Tr. 23).

Ms. Flamming argues that the ALJ's RFC does not properly account for a primary headache disorder because limiting the complexity of instructions or the speed of work does not "account for the time a worker is completely off task during a headache episode, or the days she cannot come to work at all." (ECF No. 11, PageID # 1887). But the ALJ did not find that Ms. Flamming's headaches would force her to be completely off task or result in her missing work. Nor has Ms. Flamming identified opinion evidence or medical records compelling that conclusion.

At most, Ms. Flamming has identified evidence regarding her headaches that could have supported a more restrictive RFC. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by

the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"). Substantial evidence supports the ALJ's treatment of Ms. Flamming's headaches here. Her third assignment of error is not well-taken.

## VI. CONCLUSION

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Ms. Flamming's application for SSI.

Dated: November 23, 2026

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge